**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>741, INC., d/b/a WISDOM RIDES OF AMERICA,<br><br>Debtor. | Bankruptcy Case No. 25-15550 TBM<br>Chapter 11 |
| COTA YELLOW BRICK ROAD, LLC,<br><br>Plaintiff,<br><br>v.<br><br>741, INC., d/b/a WISDOM RIDES OF AMERICA,<br><br>Defendant. | Adv. Pro. No. 25-01345 TBM |

_____

**ORDER GRANTING MOTION TO DISMISS**
_____

## I.      Introduction.

Dischargeable or nondischargeable.  That is the question.  The Debtor, 741, Inc. d/b/a Wisdom Rides of America (the "Debtor"), is a corporate entity which mainly manufactures amusement park rides.  The Plaintiff, Cota Yellow Brick Road, LLC (the "Plaintiff"), asserts that the Debtor is indebted to it for failure to timely deliver an amusement park ride known as the "Genesis."  In 2024, the Plaintiff sued the Debtor in Colorado State Court for breach of contract, unjust enrichment, theft, and fraud.  Before the conclusion of the Colorado State Court case, the Debtor filed for protection under Chapter 11 of the Bankruptcy Code seeking to reorganize.[1]  Undeterred, the Plaintiff initiated this Adversary Proceeding by filing a "Complaint for Determination of Dischargeability of Debt Owed and Objection to Debtor's Discharge Pursuant to 11 U.S.C. § 523(a)(2) and (a)(4)" (Docket No. 1, the "Complaint").[2]  The Plaintiff alleged

---

[1]      All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.  Unless otherwise indicated, all references to "Section" are to sections of the Bankruptcy Code.

[2]      Unless otherwise indicated, the Court will refer to particular documents contained in the CM/ECF docket for this Adversary Proceeding, using the convention: "Docket No. ____."  Similarly, the Court will refer to a particular document filed in the CM/ECF docket for the Debtor's Main Bankruptcy Case, _741,_

that the Debtor is indebted to the Plaintiff and that such debt is nondischargeable under Sections § 523(a)(2)(A) and (a)(4).  Thereafter, the Debtor filed its "Motion to Dismiss Complaint" (Docket No. 5, the "Motion to Dismiss"), contending that a private creditor cannot invoke Section 523(a)(2)(A) and (a)(4) against a corporate debtor in a standard Chapter 11 reorganization.[3]  The Plaintiff opposed dismissal, emphasizing that the Debtor allegedly engaged in fraud.  For the reasons set forth below, the Court concurs with the Debtor.  The Plaintiff's Complaint must be dismissed because, under the Bankruptcy Code, a private creditor (like the Plaintiff) cannot invoke Sections 523(a)(2)(A) and (a)(4) against a corporate debtor (like the Debtor) in a standard Chapter 11 reorganization.

## II.      Jurisdiction and Venue.

The Court has subject matter jurisdiction over this Adversary Proceeding concerning the dischargeability of debts pursuant to 28 U.S.C. § 1334.  This dispute is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) (matters concerning the administration of the estate), (b)(2)(B) (allowance or disallowance of claims against the estate), (b)(2)(I) (determinations as to the dischargeability of particular debts), and (b)(2)(O) (other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship).  In the Complaint, the Plaintiff acknowledged this Court's jurisdiction.  (Docket No. 1 ¶¶ 7-8.)  The Debtor has not raised a jurisdictional challenge.  Accordingly, the Court finds that it has jurisdiction to enter final judgment on all claims and defenses in this Adversary Proceeding. Furthermore, venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

## III.      Procedural Background.[4]

### A.      The Debtor's Main Bankruptcy Case.

On August 28, 2025, the Debtor filed for protection under Chapter 11 of the Bankruptcy Code, commencing the Main Case captioned: *In re 741, Inc. d/b/a Wisdom Rides of America,* Case No. 25-15550 TBM (Bankr. D. Colo.).  (Main Case Docket No. 1.)  The Main Case is a standard Chapter 11 reorganization in that the Debtor did not elect the application of Subchapter V (Sections 1181-1195).  On October 6, 2025, the

---

*Inc. d/b/a Wisdom Rides of America*, Case No. 25-15550 TBM (Bankr. D. Colo.) (the "Main Case") using the convention: "Main Case Docket No. ___."

[3]      By referring to a "standard Chapter 11 reorganization," the Court refers to a corporate reorganization conducted under Sections 1101-1146 of the Bankruptcy Code, not a "small business debtor" reorganization (commonly referred to as a "Subchapter V reorganization") conducted under Sections 1181-1195 of the Bankruptcy Code.  Since the Debtor did not elect relief under Subchapter V of Chapter 11, the Court does not have occasion in this Adversary Proceeding to decide whether a corporate Subchapter V debtor may be subject to nondischargeability claims under Section 523(a).  *See, e.g.*, *Marmic Fire & Safety Co., Inc. et al. v. ETG Fire, LLC (In re ETG Fire, LLC)*, 670 B.R. 884 (Bankr. D. Colo. 2025) (denying motion to dismiss Section 523(a) nondischargeability claims against a corporate debtor in a Chapter 11 Subchapter V reorganization).

[4]      The Court takes judicial notice of the docket in this Adversary Proceeding as well as the Main Case.  *See St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may *sua sponte* take judicial notice of its docket and the facts that are part of public records).

2

Plaintiff filed Proof of Claim No. 4-1 in the Main Case, asserting a general unsecured claim in the amount of $2,050,286.  The Debtor has not objected to the Plaintiff's proof of claim.  The Debtor has not proposed, and the Court has not confirmed, a Chapter 11 plan of reorganization.

## B.    The Adversary Proceeding.

On November 26, 2025, the Plaintiff filed the Complaint against the Debtor (a Colorado corporation), thereby initiating this Adversary Proceeding.  In the Complaint, the Plaintiff alleged that it is a creditor of the Debtor.  The Plaintiff asserted a single claim for relief: nondischargeability under Sections 523(a)(2)(A) and (a)(4).  Specifically, in the Complaint, the Plaintiff contended that the alleged debt owed to it by the Debtor is nondischargeable pursuant to Section 523(a)(2)(A) because it is a debt "obtained by false pretenses, false representations, and actual fraud," and that such debt also is nondischargeable per Section 523(a)(4) because it is "based on larceny."  (Docket No. 1 ¶¶ 52-53.)

On December 17, 2025, the Debtor filed the Motion to Dismiss, seeking dismissal of the Plaintiff's claim pursuant to Fed. R. Civ. P. 12(b)(6), as incorporated by Fed. R. Bankr. P. 7012(b), on the ground that the Plaintiff failed to state in the Complaint a claim upon which relief may be granted.  On January 9, 2026, the Plaintiff presented its "Response to Defendant's Motion to Dismiss Complaint" (Docket No. 8, the "Response") opposing dismissal.  The dispute framed by the Motion to Dismiss and Response is fully briefed and ripe for decision.

## IV.    Standards for Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

Fed. R. Civ. P. 12(b)(6) provides:

> (b) Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion
>
>    . . .
>
> (6) failure to state a claim upon which relief can be granted . . . .

When considering a motion to dismiss under Fed R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded factual allegations in a complaint and view them in the light most favorable to the plaintiff.  *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).  A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is considered "plausible" when the complaint contains facts which allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Plausible" does not mean "probable", although the plaintiff must show that its entitlement to relief is more than speculative. *See id.* ("Determining whether a complaint states a plausible claim for relief will. . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense . . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"); *Twombly*, 550 U.S. at 556 ("Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement").  If the allegations in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (citation omitted).  Put another way, "the complaint must give the Court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Court is bound to accept factual allegations as true but will not give deference to legal conclusions.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Legal conclusions must be supported by well-pleaded factual allegations, which can be assumed as true and evaluated as to whether they plausibly give rise to the requested relief.  *Id.* at 679.  This process is "a context-specific task" which depends on the elements of a particular claim and requires the Court "to draw upon its judicial experience and common sense." *Burnett*, 706 F.3d at 1236 (quoting *Iqbal*, 556 U.S. at 679).  Careful evaluation is necessary to ensure that defendants are sufficiently able to prepare their defenses and avoid facially groundless litigation.

Ultimately, the critical question is: "assum[ing] the truth of all well-pleaded facts . . . and draw[ing] all reasonable inferences therefrom in the light most favorable to the plaintiffs," whether the complaint "raise[s] a right to relief above the speculative level.'" *Dias v. City & County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).  "[G]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias*, 567 F.3d at 1178 (quoting *Duran v. Carris,* 238 F.3d 1268, 1270 (10th Cir. 2001)) (brackets in original).  Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, (1974)).

### V.      The Factual Allegations of the Complaint.

Based upon the foregoing legal standards, the focus of the Court's inquiry for the Motion to Dismiss is on the "well-pleaded facts."  The following is recitation of the facts pled in the Complaint, which the Court must assume to be true:

10.      On or about April 19, 2022, Debtor entered into a Purchase Agreement ("Agreement") with RAE Transportation, LLC ("RAE"), pursuant to which RAE agreed to purchase and Debtor agreed to construct and deliver an amusement park ride known as the Genesis to RAE in exchange for a total purchase price of $595,000 . . . .

11.      Pursuant to the Agreement, RAE paid an initial deposit for the Genesis in the amount of $178,500.00 on April 19, 2022.

12.      Pursuant to the Agreement in August 2022, RAE made an additional progress payment in the amount of $238,000.00.

13.      On February 2, 2023, RAE assigned all of its rights and obligations under the Agreement to Plaintiff pursuant to an Assignment and Assumption Agreement ("Assignment") [attached to the Complaint].

14.      RAE has since assigned all of its claims arising out of or related to the Agreement and RAE's entering into that Agreement with Debtor to Plaintiff.

15.      During the parties' negotiations related to the Agreement on April 19, 2022, Debtor's sales representative Jared Moody told Plaintiff's Director of Park Operations Matt Hughey that the lead time for the construction and delivery of the ride would be 6-8 months.

16.      Upon information and belief, Jared Moody's representation of the lead time for the construction and delivery of the ride was false, and Jared Moody knew the representation was false at the time he made it.

17.      Because Jared Moody represented that the ride would take six to eight months to complete and deliver, about six months from the date that RAE purchased the Genesis ride, Matt Hughey began following up with Debtor regarding the status of the ride's construction.

5

18.     In response to Matt Hughey's inquiries, Jared Moody would often refer Matt Hughey to Jared Davis, who, upon information and belief, is the owner and controlling member and manager of Debtor.

19.     At all times relevant hereto, Matt Hughey was an authorized agent of, and acting on behalf of, Plaintiff and/or its predecessor in interest (RAE).

20.     At all times relevant hereto, Jared Moody and Jared Davis were authorized agents of, and acting on behalf of, Debtor.

21.     Jared Davis was generally non-responsive to Plaintiff's inquiries.

22.     Following several requests for an update to which Debtor did not respond, RAE sent a demand letter to Debtor on November 2, 2022, demanding a status update and an estimated completion deadline . . . .

23.     Later, following RAE's and Plaintiff's entering into the Assignment, representatives of Plaintiff also followed up with Debtor and requested status updates.

24.     Again, following several requests for an update to which Debtor did not respond, Plaintiff send a demand letter to Debtor on August 29, 2023, demanding a status update and an estimated completion timeline . . . .

25.     Between September 2022 and August 29, 2023, Jared Davis and Jared Moody consistently made false representations related to the delays in the construction and delivery of the ride, including, but not limited to, Mr. Davis telling Matt Hughey that the manufacturer of a specific component of the ride (known as the arms) had gone out of business and Debtor needed to find a new manufacturer.

26.     Upon information and belief, Mr. Davis' representation regarding the manufacturer of the arms for the ride going out of business was false and Mr. Davis new the representation was false at the time he made it.

27.     Therefore, in Plaintiff's August 2023 letter, which was sent 17 months after the ride was purchased, Plaintiff

6

demanded that Debtor allow Matt Hughey to inspect and view the progress made on the ride in person.

28.   Matt Hughey inspected the ride in late October of 2023.  At the time of his inspection the construction of the ride was not completed.  However, Mr. Davis assured Mr. Hughey that they had found a new manufacturer to make the arms and that the ride would be delivered late December 2023 or early January 2024.

29.   Upon information and belief Mr. Davis' representations that Debtor had a new manufacturer making the arms for the ride was false and Mr. Davis knew the representation was false at the time he made it.

30.   Mr. Davis' representation that the ride would be delivered late December 2023 or early January 2024 was false.  As of the date of this Complaint, the ride still has not been completed and recent photographic images of the ride show no progress since the inspection in October 2023.

31.   Upon information and belief Mr. Davis knew that his representations regarding delivery in December 2023 or January 2024 were false at the time he made them.

32.   After January 2024 came and went, Matt Hughey continued to consistently inquire regarding the statute of the ride.

33.   Debtor continued to make excuses and false representations related to the delays.

34.   For example, on February 28, 2024, Jared Moody told Matt Hughey that one of Debtor's main workers working on the hydraulics for the ride hurt his back and would be out for two weeks.

35.   Upon information and belief, Mr. Moody's representation regarding Debtor's employee hurting his back was false and Mr. Moody knew it was false at the time he made it.

36.   Following months of Debtor making more excuses, on March 4, 2024, Plaintiff sent a final letter demanding a guaranteed completion date by which the ride would be delivered to Plaintiff as well as photos of the ride . . . .

7

37.     Debtor did not respond to Plaintiff's March 4, 2024, demand letter.

38.     Upon information and belief, Debtor had and still has no intention to complete the construction of the ride and deliver it to Plaintiff.

39.     Upon information and belief, Debtor nevertheless intends to permanently deprive Plaintiff of the $416,500.00 in payments made by RAE.

40.     Since the parties entered into the Agreement, the cost of similar rides has increased and the estimate time for construction has also increased.  Plaintiff learned of these cost increases while taking reasonable steps to mitigate its damages by finding a replacement ride.

41.     Based on the foregoing, on April 17, 2024, before Debtor initiated these voluntary bankruptcy proceedings, Plaintiff initiated a civil action in Logan County District Court styled as *COTA Yellow Brick Road, LLC v. 741 Inc d/b/a Wisdom Rides of America,* Logan Cnty. Dist. Ct. Case No. 2024 CV 30025 ("Action").

42.     The Action sought relief for Debtor's breach of contract, unjust enrichment, civil theft pursuant to C.R.S. § 18-4-405, fraud in the inducement, fraudulent misrepresentation, and negligent misrepresentation.

(Docket No. 1 ¶¶ 10-42.)  Per Fed. R. Civ. P.12(b)(6) standards, the Court accepts all of the foregoing factual allegations as true for purposes of adjudicating the Motion to Dismiss and Response.

## VI.     The Parties' Arguments.

## A.     Summary of Debtor's Argument in the Motion to Dismiss.

In the Motion to Dismiss, the Debtor seeks dismissal of the Plaintiff's sole claim (under Sections 523(a)(2)(A) and (a)(4)) based on an alleged "failure to state a claim upon which relief can be granted" pursuant to Fed. R. Civ. P. 12(b)(6).  Specifically, the Debtor asserts:

A debtor's discharge in a traditional Chapter 11 case is governed by 11 U.S.C. §1141(d).  The plain language of § 1141(d)(2) and (6) limits dischargeability claims under

8

§ 523 to claims against individuals.  *See In re Palmer Drives Controls and Systems, Inc.*, 657 B.R. 650, 655 (Bankr. D. Colo. 2024).

(Docket No. 5 ¶ 9.)  Because the Debtor in this case is a Chapter 11 corporate debtor seeking a discharge under Section 1141(d), the Debtor asserts, the Plaintiff fails to state a claim under Section 523(a) upon which relief may be granted.  (Docket No. 5 ¶ 11.)

## B.  Summary of Plaintiff's Argument in the Response.

The Plaintiff contests the Motion to Dismiss, arguing that the Court should reject the Plaintiff's argument that Section 523(a) does not apply under the particular circumstances of this case.  The Plaintiff argues that the circumstances in the caselaw cited by the Debtor are distinguishable from the situation at hand, and that the caselaw is not binding on the Court.  The Plaintiff further disagrees that the language of Section 1141 limits dischargeability claims under Section 523(a) to claims against individuals and asserts that nothing in Section 1141(d) expressly states that the exceptions to discharge contained in Section 523(a) do not apply to corporate debtors in a standard Chapter 11 reorganization.

In addition to arguing that statutory interpretation demonstrates the applicability of Section 523 to corporate debtors, the Plaintiff contends that "public policy and equity weigh in favor of this Court's rejecting [the Debtor's] attempts to shed its liability for fraud and theft."  Because the Debtor is not an honest but unfortunate debtor and because allowing discharge of the Debtor's debt to the Plaintiff will not serve the purpose of providing for an equitable distribution to creditors, the Plaintiff argues, Section 523(a) should apply.  The Plaintiff also contends that allowing for discharge of the Debtor's debt to it will only serve to complicate the Debtor's bankruptcy case, because if the Plaintiff's debt is not deemed nondischargeable, then the Plaintiff will be forced to seek dismissal of the Debtor's case, to object to its plan of reorganization, or to file a competing plan.

## VII.  Legal Analysis.

## A.  General Framework for Evaluation of Section 523(a) Claims.

The Plaintiff bears the burden of establishing nondischargeability of a particular debt under Section 523(a) by a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991)  ("Requiring the creditor to establish by a preponderance of the evidence that his claim is not dischargeable reflects a fair balance between these conflicting interests."); *Houston v. Munoz (In re Munoz)*, 536 B.R. 879, 884 (Bankr. D. Colo. 2015) (requiring creditor to prove Section 523(a) claims by a preponderance of the evidence).  Additionally, exceptions to discharge under Section 523(a) "are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor."  *Bellco 1st Fed. Credit Union v. Kaspar (In re*

*Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997).  *See also Sawaged v. Sawaged (In re Sawaged)*, 2011 WL 880464, at *3 (Bankr. D. Colo., Mar. 15, 2011) (same).

The term "debt" is defined in Section 101(12) as "liability on a claim."  And, under Section 101(5), a "claim" means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ."  11 U.S.C. § 101(5)(A).

Section 523(a) nondischargeability claims all require a two-part analysis.  First, "the bankruptcy court must determine the validity of the debt under applicable law." *Hatfield v. Thompson (In re Thompson)*, 555 B.R. 1, 8 (10th Cir. BAP 2016).  *See also Lang v. Lang (In re Lang)*, 293 B.R. 501, 513 (10th Cir. BAP 2003).  This is referred to as the "claim on the debt" component.  *Thompson*, 555 B.R. at 8.  The claim on the debt component is decided based upon applicable non-bankruptcy law.  *See Grogan*, 498 U.S. at 283  ("The validity of a creditor's claim is determined by rules of state law."); *New Mexico Dep't of Workforce Solutions v. Beebe (In re Beebe)*, 2016 WL 4945454, at *6 (Bankr. D.N.M. Sept. 14, 2016) ("Whether a debt exists is determined by looking to applicable law, frequently state law.  To establish the claim on the debt under § 523(a)(2)(A), the claimant must establish that the debtor is liable on an enforceable obligation under applicable non-bankruptcy law, nothing more nor less.")  Second, if there is a valid debt, "the bankruptcy court must determine the dischargeability of that debt under Section 523."  *Id*.  *See also Lang*, 293 B.R. at 513 ("bankruptcy law controls with respect to the determination of nondischargeability").  This is referred to as the "dischargeability" component.  *Thompson*, 555 B.R. at 8*.*

So, generally, the Court's first step in determining whether a plaintiff has stated a claim under Section 523(a)(2)(A) or (a)(4), is evaluating whether the facts pled in support of each claim for relief suffice to state a claim, based upon applicable non-bankruptcy law, for which a defendant may be liable, or indebted to a plaintiff.  The next step requires the Court to determine whether a plaintiff has pled facts that could support a determination that any such debt is nondischargeable, based on bankruptcy law.

At this stage in this dispute, the Debtor does not contest the "claim on the debt'" component.  Instead, the Debtor's argument for dismissal relates solely to the second component: dischargeability.  Rather than attack the legal sufficiency of the Complaint based upon the factual allegations, the Debtor instead advances a facial challenge and contends that (even if all the factual allegations are accepted as true) the debts of a corporate debtor in a standard Chapter 11 case simply are not subject to nondischargeability under Section 523(a) such that the Plaintiff cannot state a claim for relief under Fed. R. Civ. P. 12(b)(6).  The issue is narrow and based mainly on statutory analysis.

10

**B.**     <u>**General Rules of Statutory Construction.**</u>

The Tenth Circuit Court of Appeals has described the Court's task in determining the meaning of statutory language as follows:

> "[I]n all cases involving statutory construction, our starting point must be the language employed by Congress, . . . and we assume that the legislative purpose is expressed by the ordinary meaning of the words used." [*Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (internal quotations and citations omitted)].  "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, [447 U.S. 102, 108 (1980)].

*U.S. ex rel. Holmes v. Consumer Ins. Grp.*, 318 F.3d 1199, 1208 (10th Cir. 2003) (brackets added, ellipses in original).  Indeed, if the statutory language is clear, the analysis ends.  *U.S. v. Manning*, 526 F.3d 611, 614 (10th Cir. 2008).

**C.**     <u>**The Relevant Statutes.**</u>

The Complaint is based exclusively on Sections 523(a)(2)(A) and (a)(4).  So, the Court starts there.  Section 523(a) provides:

> A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge *an individual debtor* from any debt . . .
> . . .
>
> (2) for money, property, services . . . to the extent obtained by
>
>   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .
>
>   . . .
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .

(Emphasis added.)  Although the term "individual" is not defined in the Bankruptrcy Code, "Congress clearly did not intend the term 'corporate debtor' to be used interchangeably with the term 'individual debtor,' as such construction would 'render meaningless employment by Congress of the term 'individual.'" *Yamaha Motor Corp. U.S.A. v. Shadco, Inc.*, 762 F.2d 668, 670 (8th Cir. 1985).  *See also In re Pelkowski*, 990 F.2d 737, 742 (3d Cir. 1993) ("We believe it is evident that 'individual' debtor is

11

used in contradistinction to 'corporate' debtor."); *In re Automatic Plating of Bridgeport, Inc.*, 202 B.R. 540, 542 (Bankr. D. Conn. 1996) ("[I]t is apparent from the separate enumeration of individual and corporation in § 101(41) that those entities were intended to be treated separately under the code.").  Thus, by its express terms, Section 523(a) plainly limits a cause of action for nondischargeability to cases involving individual debtors – not corporate debtors like the Debtor.

But that is not the end of the story.  Section 523(a) also cross-references Section 1141, which governs dischargeability in Chapter 11 cases.  In relevant part, Section 1141 states:

> (a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor . . . and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.
>
> . . .
>
> (d)
>
> > (1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan —
> >
> > > (A) discharges the debtor from any debt that arose before the date of such confirmation . . . .
> >
> > (2) A discharge under this chapter does not discharge a debtor *who is an individual* from any debt excepted from discharge under section 523 of this title.
> >
> > (3) The confirmation of a plan does not discharge a debtor if —
> >
> > > (A) the plan provides for the liquidation of all or substantially all of the property of the estate;
> > >
> > > (B) the debtor does not engage in business after consumation of the plan; and

(C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title . . .

. . .

(5) In a case in which the debtor is an *individual* —

(A) unless . . . the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the the court grants a discharge on completion of all payments under the plan . . .

. . .

(6) Notwithstanding paragraph (1), the confirmation of a plan does not discharge a debtor that is a *corporation* from any debt—

(A) of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic governmental unit, or owed to a person as the result of an action filed under subchapter III of chapter 37 of title 31 or any similar State statute; or

(B) for a tax or customs duty with respect to which the debtor —

(i) made a fraudulent return; or

(ii) willfully attempted in any manner to evade or to defeat such tax or such customs duty.

11 U.S.C. § 1141 (emphasis added).

What to make of all this?  Generally, under Section 1141, confirmation of a debtor's Chapter 11 plan per Section 1129 acts to discharge those debts of the debtor that arose prior to confirmation of the debtor's plan subject only to a few exceptions.  11 U.S.C. § 1141(d).  *See also* A. Resnick and H. Sommer, 4 COLLIER ON BANKRUPTCY ¶ 523.02[2][a] (Lexis Nexis 16th ed. 2026) [hereinafter, "___ COLLIER ON BANKRUPTCY ¶ ___"] (discussing applicability of Section 523 in Chapter 11).  One exception is general in application.  Per 1141(d)(3), a Chapter 11 debtor may not receive a discharge if the confirmed plan is a liquidating plan not contemplating post-confirmation engagement in business.  The other exceptions depend on the nature of the Chapter 11 debtor.  For individual debtors only, the Section 1141(d)(1)(A) discharge "does not discharge a debtor who is an individual from any debt excepted from discharge under section 523 of

13

this title."  11 U.S.C. § 1141(d)(2).  And, for individual debtors only, Section 1141(d)(5) generally delays the entry of discharge until "completion of all payments under the plan." 11 U.S.C. § 1141(d)(5).  Then, for corporate debtors only, the Section 1141(d)(1) discharge does not discharge Section 523(a)(2)(A) or (2)(B) claims owed to a "domestic governmental unit" or for fraudulent or evasive "tax or customs duty."  11 U.S.C. § 1141(d)(6).  *See also* COLLIER ON BANKRUPTCY ¶ 523.02[2][a] (discussing exceptions). In limiting application of the exceptions to a particular type of debtor, Congress made a plain distinction between individual debtors and corporate debtors.

**D.** **Application:  The Plaintiff (a Non-Governmental Entity) Cannot Pursue Section 523(a)(2)(A) or (a)(4) Claims Against the Debtor (a Standard Chapter 11 Corporate Debtor).**

The Court concludes that the statutory interpretation exercise required to resolve the Motion to Dismiss and Response is not particularly complicated.  The Debtor is a Colorado corporation.  (Docket No. 1 ¶ 2.)  The Plaintiff is a non-governmental corporate entity (a Texas limited liability corporation).  (Docket No. 1 ¶ 1.)  Through the Complaint, the Plaintiff purports to state a single claim for relief, albeit under both Sections 523(a)(2)(A) and (a)(4), against the Debtor.  But Sections 523(a)(2)(A) and (a)(4) are addressed only to claims against "an individual debtor."  On their face, Sections 523(a)(2)(A) and (a)(4) simply do not provide a cause of action for claims against standard Chapter 11 corporate debtors — unless another statutory provision invokes application of Sections 523(a)(2)(A) and (a)(4) against standard Chapter 11 corporate debtors.  *See Shadco*, 762 F.2d at 670 ("We agree with the bankruptcy court that both the language of the statute [Section 523(a)] and the case law interpreting the statute [Section 523(a)] militate against applying the exemption to corporate debtors.").

Section 1141(d), which governs discharge in standard Chapter 11 cases, is the only possible candidate for an exception that might allow a Section 523(a) claim to be brought against a standard Chapter 11 corporate debtor regardless of the general Chapter 11 discharge per Section 1141(d)(1)(A).  Indeed, Section 1141(d) does contain some very limited exceptions.  Importantly, Section 1141(d)(6) provides that confirmation of a standard Chapter 11 plan does not discharge "a corporation" from "any debt of a kind specified in" Section 523(a)(2)(A) and (2)(B) "that is owed to a domestic governmental unit . . . ."  But that is the *only* exception identified for standard Chapter 11 corporate debtors, and it applies *only* to debts owed to governmental entities.  By specifying that single exception, Congress expressed its intent that any other Section 523(a) claims may not be brought against standard Chapter 11 corporate debtors.

Similarly, Section 1141(d) also contains a limited exception for Chapter 11 "individual[s]."  The Section 1141(d)(1) discharge "does not discharge a debtor who is an individual from any debt excepted from discharge under section 523 of this title." 11 U.S.C. § 1141(d)(2).  By specifying that exception, Congress expressed its intent that creditors may pursue Section 523(a) claims against "individual" debtors; but not standard Chapter 11 corporate debtors.

The foregoing points are obvious, but bolstered by statutory interpretation canons.  The "negative implication" canon of statutory construction (sometimes referred to in Latin as the *expressio unius* canon) applies.  It provides that "'the enumeration of certain things in a statute suggests that the legislature had no intent of including things not listed or embraced.'"  *U.S. v. Hobson*, 150 F.4th 1290, 1304 (2025) (quoting *Navajo Nation v. Dalley*, 896 F.3d 1196, 1213 (10th Cir. 2018) and *Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n*, 327 F.3d 1019, 1034 & n.24 (10th Cir. 2003) and citing *Esteras v. U.S.*, 606 U.S. 185 (2025) and other cases).  Since Section 1141 specifies in subsection (d)(2) that a discharge "under this chapter does not discharge a debtor who is an individual" and specifies in subsection (d)(6) that "confirmation of a plan does not discharge a debtor that is a corporation from any debt of a kind specified in paragraph (2)(A) or (2)(B) of Section 523(a) that is owed to a domestic governmental unit . . .," it is clear that Congress knew how to draw distinctions regarding the applicability of the exceptions delineated therein to particular types of debtors.  *See Shadco*, 762 F.2d at 670 (construing Section 523(a) and ruling that "Congress clearly did not intend the term 'corporate debtor' to be used interchangeably with the term 'individual debtor,' as such a construction would render meaningless employment by Congress of the term 'individual'").  Under the negative implication canon (as applied to Section 1141(d)(2) and (d)(6)), the Court concludes that Congress did not authorize creditors to pursue Section 523(a) claims against standard Chapter 11 corporate debtors (except as set forth in Section 523(d)(6)).

Another companion statutory canon bolsters the foregoing.  The "omitted-case canon" (sometimes referred to in Latin as *casus omissus pro omisso habendus est*), in rough English translation means:  "a matter not covered is to be treated as not covered."  Under this canon, an "absent provision cannot be supplied by the courts."  Antonin Scalia and Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 94 (Thompson/ West 2012) [hereinafter READING LAW AT __].  Indeed, "a casus omissus does not justify judicial legislation."  *Ebert v. Poston*, 266 U.S. 548, 554 (1925).  *See also In re San Luis & Rio Grande RR, Inc.*, 634 B.R. 599, 626 (Bankr. D. Colo. 2021) (same, citing *Ebert*).  The basic point is that the Court cannot add something to Section 523(a) or Section 1141(d) — which is not in the text of those statutes — to allow the Plaintiff to pursue Section 523(a)(2)(A) and (a)(4) claims against a standard Chapter 11 corporate debtor.  Although the Plaintiff makes reference to the foregoing canon, the Plaintiff misconstrues it.  The Plaintiff apparently would have the Court read:

- Section 523(a) as if it provided that a "discharge under [S]ection . . .1141, . . . does not discharge an individual debtor *or a corporate debtor*" from the debts enumerated in Section 523(a); and

- Section 1141(d)(2) as if it provided:  "A discharge under this chapter does not discharge a debtor who is an individual *or a debtor that is a corporation* from any debt excepted from discharge under section 523 of this title."

(Emphasis added to indicate added language.)  The Court cannot accept such invitation to add to the statute that which is not there.  READING LAW at 93 ("The principle that a matter not covered is not covered is so obvious that it seems absurd to recite it.").

15

Probably because the Plaintiff has such a weak statutory interpretation case, the Plaintiff resorts to public policy pleas. While there may exist valid policy reasons to apply Section 523(a) to corporate debtors in standard Chapter 11 reorganization cases, interpreting the statutes in the manner urged by the Plaintiff would result in this Court's rewriting Section 523(a) or Section 1141(d)(2), or both — an impermissible incursion into the congressional prerogative. *See Consumer Ins. Grp.*, 318 F.3d at 1208 (rejecting policy argument for reading word in statute as having an unusual meaning); *ETG Fire,* 670 B.R at 906 ("It is not this Court's place to second guess Congress and certainly not to construe the Bankruptcy Code so as to impose policies which this Court might prefer but which Congress did not adopt."). Because it is not the role of the Court, but of Congress, to revamp the statutory scheme if warranted, the Court rejects the Plaintiff's public policy argument.

Finally, the Court turns to case law. Based on its own reasearch (and coupled with the citations provided by the Plaintiff and the Debtor), the Court is unaware of *any* case law support for the proposition advanced by the Plaintiff: that it may prosecute Section 523(a)(2)(A) and (a)(4) claims against a standard Chapter 11 corporate debtor. None. On the other hand, the decisions dictating dismissal are legion. *See*, *e.g.*, *Garrie v. James L. Gray, Inc.*, 912 F.2d 808, 812 (5th Cir. 1990) ("[T]he 'willful and malicious injury' exception to discharge [Section 523(a)(6)], like all of the exceptions to discharge found in section 523(a), applies only to individual, not corporate, debtors."); *Shadco*, 762 F.2d at 670 ("the exemptions embodied in 11 U.S.C. § 523(a) do not apply to corporate debtors"); *Nyanjom v. Hawker Beechcraft, Inc.*, 2013 WL 12131296 (D. Kan. Mar 29, 2023), *aff'd* 530 Fed. Appx. 833 (10th Cir. 2013) (unpublished) ("The language and case law interpreting the statute [Section 523(a)(6)] are clear that the exception does not apply to corporate debtors."); *Williams v. Sears Holding Co.*, 2008 WL 11424255, at *4 (N.D. Ala. Mar. 28, 2008) ("The discharge exception of 11 U.S.C. § 523(a)(2)(A) which applies only to an individual debtor, does not apply to Kmart, a corporate debtor."); *Jennings v. Lapeer Aviation, Inc.*, 2022 WL 111072, at *2 (Bankr. E.D. Mich. Apr. 13, 2022) (listing cases); *In re MF Glob. Holdings, Ltd.*, , 2012 WL 734175, at *3 (Bankr. S.D.N.Y. Mar. 6, 2012); *Adam Glass Serv., Inc. v. Federated Dep't Stores, Inc.*, 173 B.R. 840, 842 (E.D.N.Y. 1994)) (Section 523(a) "only applies to individual debtors" and "is not applicable to corporate debtors"); *Century Motor Coach v. Hurst Lincoln-Mercury, Inc. (In re Hurst Lincoln-Mercury, Inc.)*, 73 B.R. 825 (S.D. Ohio. 1987) ("Defendant is correct in its assertion that a complaint for nondischargeability of a debt under § 523(a) does not state a cause of action in a corporate Chapter 11 reorganization case."); *Savoy Records Inc. v. Trafalgar Assocs. (In re Trafalgar Assocs.)*, 53 B.R. 693, 696 (Bankr. S.D.N.Y. 1985) (plaintiff's "reliance on section 523 as support for nondischargeability is misplaced because that section on its face applies only to individual debtors . . . .").

Thirty-eight years ago, one adept jurist put it this way: "It is almost undebatable and universally held that a corporate Chapter 11 debtor is not subject to the dischargeability provisions of 11 U.S.C. § 523." *Krueger v. Push & Pull Enters., Inc. (In re Push & Pull Enters., Inc.)*, 84 B.R. 546, 548 (N.D. Ind. 1988) (citing numerous cases to support proposition). The Court quite agrees that the debts of corporate debtors in standard Chapter 11 cases are not subject to the dischargeability exceptions of Section

16

523(a) (with the exception of those corporate debtors whose debts are subject to the recently-added limited exception set forth in Section 1141(d)(6), which exception is not applicable here).  Perhaps that is why it is so extremely rare for a creditor to try to sue a standard Chapter 11 corporate debtor to establish nondischargeability under Section 523(a).

Because the discharge exceptions in Section 523(a) apply only to "an individual debtor," the text of Section 1141(d)(2) limits the application of Section 523 to a "debtor who is an individual," and the language of 1141(d)(6) allows only governmental entities to bring Section 523(a)(2)(A) and (B) claims against standard Chapter 11 corporate debtors, the Plaintiff cannot state a claim for relief under either Section 523(a)(2)(A) or (4) against the Debtor, a standard Chapter 11 corporate defendant.

## VIII.    Conclusion and Order.

For the foregoing reasons, the Court GRANTS the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), as incorporated by Fed. R. Bankr. P. 7012(b).

DATED this 29th day of April, 2026.

BY THE COURT:

Thomas B. McNamara,
United States Bankruptcy Judge

17